AF Approval __NA__                                  Chief Approval ___MF__

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                                    CASE NO. 6:22-cr-148-PGB-LHP

MICHAEL JEAN POIX              **PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, MICHAEL JEAN POIX, and the attorney for the defendant, Michael William Nielsen, Esq., mutually agree as follows:

**A.**    **Particularized Terms**

     1.     <u>Counts Pleading To</u>

The defendant shall enter a plea of guilty to Counts One and Four of the Indictment. Count One charges the defendant with RICO Conspiracy, in violation of 18 U.S.C. § 1962(d). Count Four charges the defendant with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).

     2.     <u>Minimum and Maximum Penalties</u>

Count One is punishable by a maximum term of imprisonment of 20 years; a fine of not more than $250,000; a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count.

Defendant's Initials ___MJP___

Count Four is punishable by a mandatory term of imprisonment of 2 years, which must run consecutively to the term of imprisonment imposed for Count One; a fine of not more than $250,000; a term of supervised release of not more than 1 year; and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.   Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:      Two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity;

Second:   The unlawful plan affected interstate commerce;

Third:     The defendant knowingly and willfully joined in the conspiracy; and

Fourth:    When the defendant joined in the agreement, the defendant had the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

Defendant's Initials _NOP_                  2

The elements of Count Four are:

First:    The defendant knowingly transferred, possessed, or used another person's means of identification;

Second:   Without lawful authority;

Third:    During and in relation to a felony conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and

Fourth:   The defendant knew that the means of identification belonged to an actual person.

4.    Count Dismissed

At the time of sentencing, the remaining count against the defendant, Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this agreement.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the United States Treasury, identity theft victims, and Certified Public

Defendant's Initials           3

Accounting or tax preparation firms that were unlawfully breached during the course of the conspiracy charged in Count One.

      7.    <u>Guidelines Sentence</u>

          Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

      8.    <u>Acceptance of Responsibility - Three Levels</u>

          At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _MJP_        4

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.  Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 1963, whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any

forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be

Defendant's Initials _MJP_                      6

polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the

Defendant's Initials           7

abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

      10.   <u>Removal - Notification</u>

         The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.



Defendant's Initials _____     8

**B.**   **Standard Terms and Conditions**

    1.   Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials  _MTP_                    9

2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _mJ'_         10

5.      Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit

Defendant's Initials  _MJP_                11

reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      6.   <u>Sentencing Recommendations</u>

      It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _____     12

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _MJP_                13

9.  Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.  Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty,

Defendant's Initials MJP          14

defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations

exist or have been made to the defendant or defendant's attorney with regard to such

guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this ___7___ day of ~~March~~ *August*, 2023.


MICHAEL JEAN POIX
Defendant


Michael William Nielsen, Esq.
Attorney for Defendant


ROGER B. HANDBERG
United States Attorney


Dana E. Hill
Assistant United States Attorney


Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division


Defendant's Initials __MJP__          16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                      CASE NO. 6:22-cr-148-PGB-LHP

MICHAEL JEAN POIX

## PERSONALIZATION OF ELEMENTS

As to Count One:

First:     Did two or more people agree to try to accomplish an unlawful
           plan to participate in the affairs of an enterprise through a pattern
           of racketeering activity?

Second:    Did the unlawful plan affected interstate commerce?

Third:     Did you knowingly and willfully join in the conspiracy?

Fourth:    When you joined in the agreement, did you have the specific
           intent to participate in the enterprise's affairs, knowing that other
           members of the conspiracy would commit at least two other acts
           of racketeering and intending to help them as part of a pattern of
           racketeering activity?

As to Count Four:

First:     Did you knowingly transfer, possess, or use another person's
           means of identification?

Second:    Did you do so without lawful authority?

Third:     Did you do so during and in relation to a felony conspiracy to
           commit wire fraud, in violation of 18 U.S.C. § 1349?

Fourth:    Did you know that the means of identification belonged to an
           actual person?

Defendant's Initials _MJP_                17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                          CASE NO. 6:22-cr-148-PGB-LHP

MICHAEL JEAN POIX

### FACTUAL BASIS

On or about January 12, 2017, the server of an accounting firm in Orlando, Florida, identified in the Indictment as Business-11, was breached, and the personally identifiable information (PII) of Business-11's clients was thereafter stolen from the server and then used to file false tax refunds with the IRS.  The FBI initiated an investigation and identified a corrupt enterprise operating in the Middle District of Florida and nationwide to obtain PII for the purpose of committing wire fraud and mail fraud by submitting false tax refunds and retrieving the proceeds of this offense.  The FBI determined that, from at least December 21, 2015, through at leas: March 19, 2019, Defendant MICHAEL JEAN POIX, as well as coconspirators MONIKA SHAUNTEL JENKINS, LOUISAINT JOLTEUS, VLADIMYR CHERELUS, JEFF PROPHT-FRANCISQUE, ALAIN JEAN-LOUIS, ANDI JUNIOR JACQUES, DICKENSON ELAN, LOUIS NOEL MICHEL, deceased conspirator "Rich4ever4430," and others were part of that unlawful and corrupt enterprise involving the submission of false and fraudulent tax refunds based on

Defendant's Initials  _MJ`_       18

stolen PII ("Enterprise"). The FBI's investigation revealed the following true facts about this Enterprise and JEAN POIX's involvement in this Enterprise:

### *JEAN POIX's Role*

In the course of this Enterprise, Defendant JEAN POIX was a resident of Florida. Members of the Enterprise accessed a dark web market that sold illegally obtained credentials of compromised computer servers ("Marketplace"). They would use the Marketplace to purchase credentials of compromised computer servers to steal PII of taxpayers that the conspirators would later used to file false and fraudulent tax returns. JEAN-POIX's conspirators used the Marketplace to steal Electronic Filing Identification Numbers ("EFINS") – credentials used by tax preparers to file tax returns – so that they could file fraudulent and false tax returns using the stolen PII ("Stolen EFIN-Filed Returns"). JEAN-POIX and his conspirators would also create new businesses purporting to be legitimate tax preparation firms and obtaining real EFINs on behalf of these sham businesses that were then used to file fraudulent and false tax returns using the stolen PII ("Sham EFIN-Filed Returns"). JEAN-POIX's conspirators also used stolen PII to file false and fraudulent tax returns as though they were submitted by taxpayers independently, not through a CPA or accounting firm ("Self-Prepared Returns"). JEAN-POIX and his conspirators additionally used compromised computer servers to access and modify financial accounts used to receive the tax refunds obtained from

Defendant's Initials _MJP_       19

the IRS when the fraudulently submitted returns were accepted. JEAN-POIX's conspirators withdrew fraud proceeds from bank accounts created to receive the fraudulently obtained tax refunds as a result of the fraudulent and corrupt Enterprise.

JEAN-POIX worked directly with JACQUES and ELAN in furtherance of this unlawful Enterprise. JEAN-POIX worked indirectly and through other conspirators with "Rich4ever4430" in this same corrupt Enterprise. JEAN-POIX and JACQUES have had a long personal relationship and have committed tax fraud together in the past. In 2012, JEAN-POIX and JACQUES were arrested together for submitting fraudulent tax returns and using the bank account of an individual with diminished capacity to receive and distribute fraud proceeds.

Each false tax return filed in the course of this corrupt Enterprise was filed with the intent to defraud as part of a scheme to defraud by using false or fraudulent pretenses or representations about material facts and through the use of communications transmitted via wires in interstate commerce.

### *Chantol Multiservices (CMS)*

JEAN POIX worked with JACQUES, ELAN, and others to create and operate a corrupt business, Chantol Multiservices (CMS), to advance the aims of the corrupt Enterprise. Fake and fraudulent tax refund returns reflected essentially all of the tax returns submitted through CMS; CMS was a sham business created for the

Defendant's Initials _M J P_          20

purpose of advancing the unlawful and fraudulent tax refund scheme and the unlawful Enterprise.

Starting in November 2017, JEAN POIX worked with Person-4 to establish CMS as a purported tax preparation firm, using Person-4's identity, address, and phone number to facilitate the Enterprise's tax fraud. In January 2018, Person-4, working at the direction of JEAN POIX and his conspirators, had Person-4's fingerprints taken to obtain the EFINs used in this scheme to file fraudulent refund returns. In January 2018 and February 2018, members of the Enterprise—including JACQUES and JEAN POIX —obtained five EFINs from the IRS purportedly for use by CMS in legitimate tax preparation. JEAN POIX created email address cmultiservices@yahoo.com, which the Enterprise used to facilitate tax fraud through CMS. The EFINs used to commit fraud through CMS were all linked to the email that JEAN POIX created.

On or about January 11, 2018, "Rich4ever4430" purchased from the Marketplace credentials for a compromised computer server of Victim Firm-15, a CPA firm in Minnesota. Thereafter, members of the Enterprise used PII stolen from the computer server of Victim Firm-15 to file false tax returns through CMS. From January 31 through February 26, 2018, JEAN POIX and others filed approximately 377 returns using the PII of Victim Firm-15's clients, claiming approximately $1.89 million in refunds.

Defendant's Initials MJP           21

One of the individuals whose PII was stolen by JEAN POIX from Victim Firm-15 and whose PII was used to file a false tax return through CMS's EFIN was K.M.O. K.M.O. was an actual person and JEAN POIX and others in the conspiracy knew that K.M.O. was an actual person at the time they transferred, possessed, and used K.M.O.'s PII in the course of submitting false and fraudulent tax returns. The fraudulent tax return was filed for K.M.O. on or about February 6, 2018.

On or about January 23, 2018, Person-4 opened a bank account in the name of CMS and allowed JEAN POIX to control the account. Thereafter, from in or about February 2018 through April 2018, JEAN POIX and his conspirators used the account to receive preparer fees that CMS had purportedly earned.

In 2018, JEAN-POIX worked with JACQUES, ELAN, and "Rich4ever4430" to file, cause to be filed, and aid and abet the filing of, approximately 441 tax returns using stolen PII through CMS, claiming more than $2.2 million in tax refunds.

### *Victims and Losses Attributable to Corrupt Enterprise*

In the course of this corrupt Enterprise, the participants filed 9,214 tax returns using fraudulently stolen PII and EFINs, claiming a total amount of refunds of more than $45 million. The IRS accepted many of these returns, paying an estimated total of more than $6 million in fraudulent refunds. The following reflects an estimation of the total amounts claimed on fraudulent tax returns using stolen EFINs, stolen

Defendant's Initials _M)P_                22

PII, and EFINs associated with firms like FSL that were created by the members of

the Enterprise to advance the fraudulent aims of the Enterprise.

| Entity Whose EFIN was Used | Fraudulent Tax Returns Submitted | Amounts Fraudulently Claimed |
|---|---|---|
| Morton Fast Refund (MFR) | 828 | $4,532,354 |
| SC Accounting and Tax Services (SCA) | 303 | $1,558,327 |
| Chantol Multiservices (CMS) | 441 | $2,223,395 |
| Yvelene Tax Services (YTS) | 455 | $2,476,789 |
| FSL Multiservices (FSL) | 664 | $3,099,291 |
| Edvert Tax Prep (EDV) | 1046 | $5,140,673 |
| AAJR Multiservices (AAJR) | 1853 | $6,767,992 |
| Deedee Multiservices (DMS) | 605 | $1,728,728 |
| RP Tax | 67 | $277,827 |
| Victim Firm-1 | 331 | $1,464,738 |
| Victim Firm-2 | 57 | $294,887 |
| Victim Firm-3 | 109 | $551,234 |
| Victim Firm-4 | 175 | $1,145,257 |
| Victim Firm-5 | 214 | $1,577,384 |
| Victim Firm-6 | 219 | $1,143,764 |
| Victim Firm-7 | 147 | $452,150 |
| Victim Firm-8 | 296 | $2,099,859 |
| Victim Firm-9 | 158 | $1,035,240 |
| Victim Firm-10 | 277 | $1,454,602 |
| Self-prepared | 969 | $6,409,684 |
| **TOTALS** | **9,214** | **$45,434,175** |

Based on the evidence and investigation, the Government and the Defendant

agree that the readily provable estimation of losses attributable to the Defendant's

participation includes the tax refunds fraudulently submitted through CMS.

In all of this conduct, two or more people agreed to try to accomplish an

unlawful plan to participate in the affairs of an enterprise through a pattern of

Defendant's Initials MJP          23

racketeering activity, this unlawful plan affected interstate commerce, JEAN POIX knowingly and willfully joined in the conspiracy, and, when JEAN POIX joined in the agreement, JEAN POIX had the specific intent either to personally participate in committing at least two other acts of racketeering, or else to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.

In addition, on or about February 6, 2018, JEAN POIX knowingly transferred, possessed, or used, or aided and abetted the transfer, possession or use of, without lawful authority, the name and social security number of K.M.O., during and in relation to conspiracy to commit wire fraud, knowing that such means of identification belonged to an actual person.